UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ORLANDO SOTO, CONSERVATOR of the ESTATE OF ISRAEL SOTO, Plaintiff, | : : : : |
| v. | : No. 3:10-cv-106 (WWE) : |
| JOSEPH L. GAUDETTE, MARTIN HEANUE, DAMIAN CSECH, CHRIS ROBINSON, CHRISTOPHER STEPNIEWSKI, JANE DOE, JOHN DOE and CITY OF BRIDGEPORT, Defendants. | : : : : : : : |

**RULING ON DEFENSE MOTIONS FOR SUMMARY JUDGMENT AND IN LIMINE**

Plaintiff Orlando Soto, conservator of the estate of Israel Soto, alleges several civil rights violations pursuant to 42 U.S.C. § 1983 against the City of Bridgeport, Chief of Police Joseph L. Gaudette, Officer Martin Heanue, Officer Damien Csech, Officer Chris Robinson, and Sergeant Christopher Stepniewski.[1]

The complaint alleges that defendants violated his Fourth Amendment rights by inflicting unreasonable force upon him and failing to intervene; acting with deliberate indifference to unconstitutional policies and improper training and supervision of the police officers; and falsely arresting him. He also alleges violation of the Connecticut Constitution and asserts state common law and statutory claims for reckless and negligent conduct, intentional infliction of emotional distress, negligent infliction of emotional distress, assault and battery, liability for negligence under Connecticut General Statutes § 52-557n, and indemnification.

---

[1] Plaintiff has also named Jane Doe and John Doe in his complaint.

1

Defendants have filed a motion for summary judgment and a motion in limine. For the following reasons, the motion for summary judgment will be granted in part and denied in part; and the motion in limine will be granted in part and denied in part.

## I.  BACKGROUND

The parties have submitted statements of facts with evidentiary exhibits and affidavits that reveal the following factual background.

Plaintiff Orlando Soto is the brother of Israel Soto and conservator of the estate of Israel Soto.  For purposes of this ruling, the Court will refer to Israel Soto as the plaintiff.

On January 23, 2008, at 2:18 a.m., defendant Officer Heanue was on patrol in Bridgeport, Connecticut.  According to his testimony, Officer Heanue saw a vehicle (later determined to be a Camry) turn left onto North Avenue without signaling and without use of its headlights.  Officer Heanue stated that he decided to pull over the vehicle because it did not have its headlights on.  He activated his lights and sirens and made a u-turn to get behind the vehicle.  He recounted that the vehicle "accelerated at a high rate of speed" in the westbound direction.  At that time, he made a priority transmission, stating that he was trying to stop the vehicle as it fled without the use of headlights.  Officer Heanue recalled that the vehicle sped through red lights at two intersections.

The vehicle later passed Sergeant Stepniewski, who observed that the car was driving fast.  Sargent Stepniewski radioed that he had observed something thrown out of the car window.  He reported that he stopped his police vehicle but was unable to find anything after a quick search.

Officer Heanue recounted that the vehicle later turned the wrong way down a one-way street. Officer Damien Csech drove his police vehicle with his sirens and lights activated toward the approaching vehicle. Officer Csech described how he had to avoid a head-on collision with the Camry as it approached his police cruiser. Officer Csech observed that the vehicle was driving "very fast."

Officer Heanue followed the car as it traveled down Park Avenue toward the Seaside Park Arch. As the vehicle approached the Arch, Officer Heanue stated that he observed three individuals exiting the vehicle. He reported that he saw the left rear tire of the car roll over part of the individual who exited from the driver's door, although that individual was able to get up immediately.

Officer Heanue followed an individual who had exited the rear door of the vehicle and had run to a nearby snack bar. Officer Heanue arrested the individual after he found him hiding under a picnic table at the snack bar. Officer Heanue learned that individual's identity to be Carl Young.

Officer Csech reported that he arrived at Seaside Park at approximately the same time as Officer Stepniewski. Csech recounted that he saw Soto running from the left side of the Perry Arches. He yelled out for Soto to stop. Csech described that Soto continued to run "at full speed" while looking back at him.

Officer Robinson reported that he drove toward Seaside Park with his lights and sirens activated in the northbound lane of Park Avenue due to the police vehicles parked in the southbound lane. As he was driving, Officer Robinson hit Soto with his car. Officer Csech reported that he witnessed Soto stand back up and start running after being knocked down by the car.

Shortly thereafter, Officer Csech fired his taser gun and struck Soto, who fell to the ground.[2] Officer Csech testified that Soto ignored his orders to stop. Officer Csech recalls that Officers Robinson and Stepniewski were also chasing Soto. Officer Csech discharged his taser in Soto's direction. Officer Csech testified that he appeared to fall flat on his face.

Sergeant Stepniewski recalls that he yelled for Soto to "get down on the ground." Csech and Robinson have indicated that they saw Soto pushing up and arching his back. Robinson and Stepniewski reported that they believed Officer Csech's taser cycle had ended or was no longer effective. Robinson and Stepniewski deployed their tasers at Soto. They both assert that neither one of them was aware that the other had deployed his taser.

Csech and Stepniewski reported that, after the taser deployments, Soto lay face down with blood coming from his head or face area.

Officer Csech recalled that he was instructed by Sergeant Stepniewski to search the park for any suspects, contraband or anyone needing assistance.

After an emergency medical response team was called for assistance, American Medical Response of CT dispatched an ambulance at 2:24 AM, which arrived at 2:32 AM. Paramedics confirmed that Soto had a pulse and was breathing normally but was nonresponsive and had a "closed head injury." He was transported to St. Vincent's Hospital where he was treated for a fractured skull and severe traumatic brain injury.

Plaintiff was charged with larceny, attempted assault on a police officer, engaging police in pursuit, reckless operation of a motor vehicle, interference with a

---

[2] The Taser X26 CEWs were equipped with TASER CAMs, which recorded the deployments.

police officer, criminal trover, criminal mischief, driving without headlights, misuse of plate and driving without a license.  Plaintiff was never tried or convicted for any of these offenses.  The vehicle that plaintiff had exited was determined to be a stolen Camry containing stolen property.

Plaintiff asserts that he has suffered permanent traumatic brain injury and is unable to communicate.

## II.  STANDARD OF REVIEW

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

### III.  DISCUSSION

Defendants argue that they are entitled to summary judgment because they did not violate plaintiff's constitutional rights and are entitled to qualified immunity.  Due to plaintiff's asserted inability to communicate, the Court has only the defendants' testimony and police reports and records to assess the circumstances of the alleged violations. "[T]he court may not simply accept what may be a self-serving account by the police . . . but must also consider circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." O'Bert ex rel Estate of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003).

    A.    Officer Heanue

Defendant Heanue argues that he is entitled to summary judgment on the claims alleging violation of the United States Constitution's Fourth Amendment and of the Connecticut Constitution's Article I, §§ 7 and 9.  He asserts that he did not violate plaintiff's constitutional rights and he is entitled to qualified immunity.

        1.    Fourth Amendment Excessive Force

A claim by a citizen that law enforcement officials used excessive force is reviewed under the Fourth Amendment "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989).[3]  However, any claim predicated on the Fourth

---

[3] To determine whether excessive force occurred, the Court considers the "objective reasonableness" of a particular use of force by a police officer, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing interests at stake." Graham, 490 U.S. at 396.  This analysis requires careful attention to the individual circumstances present, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

6

Amendment must involve a cognizable search or seizure.  Bourn v. Bull, 2013 WL 1285858, at *3 (D. Vt. 2013).  Generally, physical restraint or an assertion of authority to restrain a person's freedom of movement by a law enforcement officer constitutes a seizure.  Pinto-Montoya v. Mukasey, 540 F.3d 126, 132 (2d Cir. 2008).

However, a Fourth Amendment seizure "does not occur whenever there is a governmentally caused termination of movement ... nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement ..., but only when there is a governmental termination of freedom of movement *through means intentionally applied*."  Brower v. Cnty. of Inyo, 489 U.S. 593, 596-97 (1989).  Thus, no seizure occurs where police seek to stop a suspect by show of authority "represented by flashing lights and continuing pursuit" but accidentally stop the suspect by crashing into him or her; by contrast, a seizure would occur if the police officer had intentionally pulled the cruiser alongside the fleeing car and sideswiped it, producing a crash that terminated the suspect's freedom.  Id.  The Supreme Court has explained that a seizure does not occur for purposes of the Fourth Amendment where the pursuit is not terminated "through means intentionally applied." Cnty of Sacramento v. Lewis, 523 U.S. 833 (1998).

Here, no evidence indicates that defendant Heanue's pursuit of the vehicle resulted in a termination of plaintiff's freedom through means intentionally applied. Accordingly, consistent with Supreme Court precedent, the Court cannot find that seizure occurred as result of Officer Heanue's conduct.  The Court will grant summary judgment in defendant Heanue's favor on the Fourth Amendment excessive force claim.

7

      2.      Article I, §§ 7 and 9

The Connecticut Supreme Court has recognized a private right of action for money damages stemming from violations of Article I §§ 7, 9 of the Connecticut Constitution, which prohibit unreasonable searches and seizures and unlawful arrests or detentions. <u>Binette v. Sabo</u>, 244 Conn. 23, 33 (1988). However, Connecticut state courts have limited the private right of action to circumstances involving egregious violations. <u>Bauer v. City of Hartford</u>, 2010 WL 4429697, at *12 (D. Conn. 2010). In this instance, Officer Heanue did not search or seize plaintiff, nor do the circumstances give rise to an inference of egregious conduct.[4]

    B.    <u>Taser Deployments by Defendants Csech, Robinson and Stepniewski</u>

Defendants Csech, Robinson and Stepniewski argue that qualified immunity shields them from liability on the taser-based claims.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). Consequently, a defendant is entitled to qualified immunity if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." <u>Hartline v. Gallo</u>, 546 F.3d 95, 102 (2d Cir. 2008).

---

[4] In <u>Martin v. Brady</u>, the Connecticut Appellate Court found that plaintiff had not alleged sufficiently egregious conduct where plaintiff complained that state officers had entered his home without a valid search warrant, pushed him to the ground, and smashed the windows and doors of his house. 64 Conn. App. 433, 441 (Conn. App. 2001).

"A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what [he or she] is doing violates that right." Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004). The Court need not rely on a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The defense of qualified immunity is an affirmative defense and a defendant must prove that it would be clear to a reasonable officer that his or her conduct was objectively reasonable. See Lore v. City of Syracuse, 670 F.3d 127, 149 (2d Cir. 2012) (noting that qualified immunity is an affirmative defense for which defendants have the burden of proof). With respect to summary judgment, a court should find qualified immunity only where an official has met his or her burden demonstrating that no rational jury could conclude that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012).[5]

It is well established that the Fourth Amendment protects an individual from the government's use of excessive force when detaining or arresting that individual. Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006); Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999). An officer's use of force in effecting an arrest is not without limit and must be reasonably related to the nature of the suspect's resistance and the threat or

---

[5] A district court may have a jury determine predicate factual findings but the question of whether an officer is entitled to qualified immunity remains with the Court. Lore, 670 F.3d at 162.

reasonable perception of threat against the officer.  See Sullivan v. Gagnier, 225 F.3d 161, 165-166 (2d Cir. 2000).  The Supreme Court explained that it was "loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger."  Scott v. Harris, 550 U.S. 372, 385-86 (2007).

This Court has found no Second Circuit or Supreme Court precedent establishing that a fleeing suspect had a right not to be subjected to non-lethal force of a taser as of January 23, 2008.  See Cockrell v. City of Cincinnati, 468 F. App'x 491, 494-97 (6th Cir. 2012) (as of July 3, 2008, fleeing misdemeanant did not have "clearly established right" to be free of taser while fleeing).  As of January 23, 2008, Fourth Amendment jurisprudence had "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" and that the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight.  Graham, 490 U.S. at 396.

At the same time, according to Second Circuit precedent, it was also clearly established law as of January 23, 2008, that use of significant non-lethal force--such as a taser or pepper spray--against a compliant or non-threatening suspect would violate the Fourth Amendment.  Tracy v. Freshwater, 623 F.3d 90, 98-99 (2d Cir. 2010) (considering incident occurring in April 2000); Garcia v. Dutchess County, 43 F. Supp. 3d 281, 297 (S.D.N.Y. 2014) (finding such "clearly established right" as of April 2000 based on Tracy).

10

Thus, in considering qualified immunity, the Court must make a factual determination whether each officer's taser deployment represented a response to a non-compliant individual's efforts to resist arrest or a gratuitous use of force against an incapacitated individual who posed no immediate threat.

The Court is mindful that the officers' testimony and police reports comprise the evidentiary basis of the Court's understanding of the events at issue. The officers' testimony and police reports indicate that plaintiff fled after exiting the vehicle, that he was struck by a police cruiser operated by Officer Robinson, that he stood up and continued to run after the collision, and that he fell to the ground after being hit in the back by Officer Csech's taser. Officer Csech testified that he ordered plaintiff to stop and deployed his taser from an approximate distance of 25 feet. The evidentiary record does not indicate that he warned plaintiff that he would be tased if he did not comply with police orders.

Recently, in Rogoz v. City of Hartford, the Second Circuit held that the district court erred by making a credibility determination that resolved a material issue of fact against the plaintiff, noting several instances where the district court had failed to view the record in the light most favorable to plaintiff with regard to inferences of the plaintiff's compliance and the degree of reasonable force required of the situation. 796 F.3d 236, 250 (2d Cir. 2015). Here, the Court would run afoul of the same error if it accepted the officers' version of events without considering any potential factual inferences arising from the described circumstances construed most liberally for plaintiff.

Depending upon the degree of force he sustained when hit by Officer Robinson's cruiser, plaintiff may not have had the capacity to pose such threat of flight and

11

resistance that required Csech's immediate without-warning taser deployment. See Bombard v. Volp, 44 F. Supp. 3d 514, 526 (D. Vt. 2014) (denying summary judgment on qualified immunity grounds due to questions of fact concerning whether it was reasonable for an officer to deploy taser due his belief that plaintiff presented a danger and was resisting arrest). The Court has reviewed the video from Csech's taser cam but it fails to resolve such question of fact. A jury will be required to determine whether to accept as credible Officer Csech's depiction of the events leading to his taser deployment. Accordingly, construing the evidence most liberally to plaintiff, the Court cannot determine as a matter of law that Csech is entitled to qualified immunity on summary judgment.

Similarly, the Court cannot rely without question upon defendant Robinson's and Stepniewski's reports that they deployed their tasers without knowledge of each other's actions when they both observed plaintiff pushing up off the ground. Questions of fact remain relative to whether plaintiff presented a threat or resistance when he was lying face down on the ground after having been hit by a car and tased in the back; and whether either Robinson or Stepniewski perceived one another's conduct prior to resolving to deploy a taser. The Court's review of the relevant taser cams has not assisted in resolving disputed issues of fact that must be construed in favor of the plaintiff. Summary judgment will be denied.

    C.    <u>Defendant Robinson's Police Cruiser Collision with Plaintiff</u>

Defendant Robinson argues that he is entitled to summary judgment on the Fourth Amendment claims relevant to collision with plaintiff. He asserts that he did not commit a constitutional violation of plaintiff's rights because he did not intentionally

strike plaintiff. He also contends that he is entitled to qualified immunity. Consistent with its previous discussion, the Court cannot determine credibility or intent on summary judgment. The motion for summary judgment will be denied on this basis.

D. Sergeant Stepniewski's Alleged Beating of Plaintiff

Plaintiff asserts that Sergeant Stepniewski beat plaintiff with blows to the head while he was unresponsive and face down. Defendants argue that plaintiff cannot offer any evidence of this alleged beating because there is no testimony, no police report, no witness reports or other circumstantial evidence that would raise an inference that such event occurred.

In support of his claim, plaintiff relies upon an unsworn letter from a medical expert, Dr. Adam Mednick, a neurologist who opined: "Mr. Soto suffered severe traumatic brain injury due to sudden and severe lateral blows to the right side of his head while he was on the ground at his final resting place, leading to quick rotational movements of his brain, thereby causing both diffuse axonal injury and coma. No other injuries or falls suffered by Mr. Soto on the evening of January 23, 2008 prior to where he was found in his final resting spot was severe enough to have led to, or caused, his coma."

Dr. Mednick's unsworn letter represents inadmissible hearsay, which is considered an inappropriate response to substantiate a claim in opposition to a motion for summary judgment. United States v. All Right, Title & Interest in Real Property & Appurtenances, 77 F.3d 648, 657-58 (2d Cir. 1998); Burgos v. City of Rochester, 2003 WL 22956907, at *3 (W.D.N.Y. 2003). With scant evidence available for review, a

reasonable jury's consideration of this claim would necessitate speculation. The Court will grant summary judgment in defense's favor on this claim.

      E.     False Arrest

Plaintiff alleges that defendants are liable for an unconstitutional false arrest in violation of Section 1983 and Article 1, § 9. Defendants maintain that they are either not liable for false arrest or are shielded by qualified immunity because there was probable or arguable probable cause, respectively, for the arrest.

The Fourth Amendment to the United States Constitution and Article I, § 9 of the Connecticut Constitution guarantee that an individual shall not be arrested without probable cause. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Martel v. Town of South Windsor, 562 F. Supp. 2d 353, 358 (D. Conn. 2008). A claim for false arrest under section 1983 requires plaintiff to establish that (1) defendant intentionally arrested him or had him arrested; (2) plaintiff was aware of the arrest; (3) plaintiff did not consent to the arrest; and (4) the arrest was not supported by probable cause. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). Probable cause "to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. "[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful." Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989). A reviewing court

must examine "those facts available to the officer at the time of the arrest and immediately before it." Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).

Even without probable cause, qualified immunity applies where an arresting officer can establish that there was arguable probable cause. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause exists, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id. at 743.

In this instance, no circumstantial evidence refutes that the officers had to chase the Camry with their lights flashing and sirens down a one-way street and then toward Seaside Park until the occupants exited without yielding despite the police show of force. At a minimum, the evidence supports a finding of arguable probable cause to arrest plaintiff on the charges that plaintiff had engaged the police in pursuit and interference with police officers. See Jaegley v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) ("it is not relevant whether probable cause existed with respect to each individual charge..."). The Court will grant summary judgment on this claim.

F. Assault and Battery

Plaintiff alleges that defendants Heanue, Robinson, Csech and Stepniewski are liable for assault and battery. Defendants argue that the state law claims necessarily fail if the excessive force claim fails. Consistent with its prior discussion, the Court finds no evidence to support a claim that defendant Heanue was involved in plaintiff's alleged assault and battery. However, the Court has concluded that there are genuine material

factual disputes regarding use of excessive force with regard to the taser deployments and the collision with plaintiff. Accordingly, defendants' motion for summary judgment will be denied as to the claims of assault and battery against defendants Robinson, Csech and Stepniewski.

      G.    Liability of Police Chief Gaudette and City of Bridgeport

Plaintiff alleges that the City of Bridgeport and its final policy maker, Chief Joseph Gaudett, are liable for failure to train, discipline, supervise or control the police officers who are involved in this action, and for failure to adopt policies and procedures to prevent the use of excessive force. Defendant asserts that plaintiff has failed to prove that the alleged constitutional violations were based on a municipal policy, custom or practice.

The Court will only consider Bridgeport and Gaudette's liability relevant to the excessive force claims based on the taser deployments and Officer Robinson's collision with plaintiff.

A municipality is liable for deprivation of a citizen's rights pursuant to 42 U.S.C. § 1983 when execution of a government's policy or custom inflicts the injury. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978). A plaintiff may establish the custom or policy by showing that the municipality, alerted to the possibility of unconstitutional conduct such as excessive force, exhibited deliberate indifference. Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

To sustain a Monell claim based on a failure to supervise, train or discipline, the plaintiff must demonstrate that the municipality was on notice of a potentially serious problem of unconstitutional conduct, that the need for corrective action was obvious,

and that the municipality failed to investigate or take action in circumstances suggesting deliberate indifference to the rights of those being harmed.  Amnesty America v. Town of West Hartford, 361 F.3d 113, 128 (2d Cir. 2004); see also City of Canton, Ohio v. Harris, 489 U.S. 378, 395 (1988) ("Without some form of notice to the city, and the opportunity to conform to constitutional dictates both what it does and what it chooses not to do, the failure to train theory of liability could completely engulf Monell, imposing liability without fault.").  Where a municipality's efforts to evaluate the claims of excessive force "are so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims."  Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir. 1986).[6]  If the municipality has taken steps to address or investigate the violation, plaintiff must show that the response was so patently inadequate so as to amount to deliberate indifference.  Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

Defendants maintain that Bridgeport's policies concerning the use of force and tasers were consistent with other police departments' comparable policies at the time. Defendants assert further that plaintiff has not raised an inference that Bridgeport, through its policy maker, made a "deliberate choice" not train its police officers or that there was any deficient training that was likely to result in a violation of constitutional rights.  Plaintiff has submitted evidence, including an expert report, that raises an

---

[6] In Fiacco, plaintiff raised an inference of deliberate indifference to police use of excessive force where the Chief of Police conducted the investigations into citizen complaints according to however much information he deemed necessary, which consisted generally of interviewing only the officers involved, with no formal statement being taken from the complainant, no file or written record being created, and no hearing held.  Id. at 331.

inference of officer noncompliance with Bridgeport police procedures, deficient police investigations, failure to provide additional training or counseling despite notice of deficiencies, and inadequate internal investigations.  The Court will leave plaintiff to his proof that such policies or practices resulted in a police department that was deliberately indifferent to excessive force violations.

### H. Motion in Limine

Defendants have filed a motion in limine to preclude the opinions of plaintiff's expert, Jeffery Noble, with regard to: (1) his legal conclusions; (2) asserted violations of Bridgeport Police Department policy; (3) prevailing police standards and practices regarding taser deployments; and (4) the risk of injury from a taser deployment as opposed tackling a suspect.

Defendants take issue with Noble's qualifications with regard to his knowledge of taser deployment policies.  Mr. Noble was formerly a Deputy Police Chief of Irvine, California.  He has co-authored a book concerning internal affairs investigations.  He has testified that he was trained and certified in the use of tasers until July, 2012.  Subject to specific objections raised at trial, the Court will allow Noble to offer opinions regarding taser deployments and prevailing police standards and practices regarding taser deployments.  Defendants may attack his credibility through cross examination.

However, any testimony that expresses a legal conclusion or instructs the jury what conclusion to reach will be excluded.  Hygh v. Jacobs, 961 F.2d 359, 363-64 (2d Cir. 1992).  Thus, plaintiff's expert may testify generally regarding accepted police procedure but may not opine that the officers acted unreasonably.  Outlaw v. City of Hartford, 2015 WL 1538230, *14 (D. Conn. 2015).  Further, to the extent relevant,

expert testimony may be offered concerning police violations of procedures, although such evidence may not be used to prove the constitutional standard for excessive force. Roguz v. Walsh, 2013 WL 1498126, at *9 (D. Conn. 2013).  The Court may cure any potential for jury confusion through bifurcation or a limiting jury instruction.  Id.

### IV.  CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment [Doc. #103] is GRANTED in part and DENIED in part.  The Motion in Limine [Doc. #104] is also GRANTED in part and DENIED in part.

The Court GRANTS the motion for summary judgment on the claims of excessive force and assault and battery against Officer Heanue; the claim of excessive force based on Stepniewski's alleged beating of plaintiff; and the claims of false arrest. The Court DENIES the motion for summary judgment on the excessive force and assault and battery claims based on the taser deployments; the excessive force and assault and battery claims against Officer Robinson based on his collision with plaintiff; and the claim of liability pursuant to Monell against the City of Bridgeport and Chief Gaudett.  The motion in limine is GRANTED as to defendants' request to exclude expert testimony on legal conclusions.

Plaintiff is instructed to file an amended complaint that is consistent with this ruling within 15 days of this ruling's filing date.

Dated at Bridgeport, Connecticut this 22nd day of October, 2015.

/s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE